# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | SA-18-CR-435(2)-XR |
| | § | |
| CHRISTOPHER LEON | § | |

## ORDER

On this day came on to be considered Defendant's motion to suppress (Dkt. No. 82).

## Background

Since April 2017, a DEA task force was investigating Joseph Gonzalez[1] for allegedly distributing crystal methamphetamine throughout San Antonio.[2] Periodic surveillance was conducted at his house located on Readwell Drive. On June 4, 2018, multiple vehicles were noted coming to the Readwell house and leaving, consistent with drug transactions taking place. The ground surveillance team was assisted that day by aerial surveillance being done by the Texas Department of Public Safety.

At approximately 5:24 PM, Mr. Gonzalez, his girlfriend Jenny Bonds, and Brandon Morris[3] left the residence, got into a Black Lexus vehicle, and went to a nearby convenience store. Mr. Gonzalez and Ms. Bonds left the store and drove away. Mr. Morris remained at the store. As soon as Mr. Gonzalez got onto IH-37 going southbound, law enforcement officers, who were following him, saw a traffic infraction (failure to maintain a single lane), at which point the deputy activated his emergency lights. Mr. Gonzalez did not immediately pull over and

---

[1] Now a co-defendant in this case.
[2] *See* Testimony of Det. Bryan Smith, hearing on Defendant's motion to suppress.
[3] Also, a co-defendant in this case.

1

continued driving for two miles. During the pursuit, the deputies noted a lot of movement in the vehicle.

Once the vehicle stopped, 71.9 grams of crystal methamphetamine were recovered from the front floorboard where Ms. Bonds was seated, and a handgun was recovered from Ms. Bonds' purse. Ms. Bonds agreed to cooperate and told the deputies that Mr. Gonzalez was on the phone during the chase with an unknown male, that Gonzalez dumped the meth on the floor and told her to pour Gatorade over it and stomp it into the floor, and that he gave her the handgun and told her to put it in her purse.

While the pursuit of the Lexus was taking place, aerial and ground surveillance was still being done at the Readwell home. The deputies at the Lexus chase informed officers on the radio that they intended to obtain a search warrant for the home based on the meth found in the car. Simultaneously, the aerial surveillance team was reporting that someone driving a silver Mitsubishi arrived at the Readwell home[4] and was placing items from the house into the back of the Mitsubishi.[5] After being at the residence for a few minutes, aerial surveillance reported the Mitsubishi was leaving the residence and TFO Ricks then began to follow the vehicle. The Mitsubishi drove a short distance[6] and parked in front of a house on Misty Pine Drive (later determined to be Defendant Leon's mother's home).

TFO Ricks arrived at Leon's mother's house. He and other officers approached the Mitsubishi with weapons drawn. TFO Ricks testified that as he approached the driver, he saw a

---

[4] Defendant Leon testified at the suppression hearing that he had received a call from Mr. Gonzalez, telling him that police were chasing him, and that he went to the Readwell residence at Mr. Gonzalez's request. *See* Testimony of Christopher Leon, hearing on Defendant's motion to suppress.
[5] *See* Testimony of Task Force Officer David Ricks, hearing on Defendant's motion to suppress.
[6] The Court takes judicial notice that the locations of the Readwell and Misty Pine homes are 0.8 miles apart by shortest car route.

red towel or blanket covering rifles, but the barrels were still visible.[7] The driver (later discovered to be Defendant Leon) and the passenger (Defendant Morris) were ordered out of the vehicle and immediately handcuffed for officer safety. A search of the vehicle found meth in the center console, at which time Leon was placed under arrest. Leon was read his *Miranda* rights and responded to some questions stating that the officers already knew where he was coming from. Leon told officers that Gonzalez had called him during his police chase and that Leon had weapons and drugs at Readwell and that Gonzalez told him to go to the house. Leon further told officers that he understood Gonzalez's request as a request to remove the weapons and drugs from the house. Several rifles, a shotgun, a pistol and a safe were found inside the Mitsubishi. A later search of the safe was conducted once the search warrant had been signed for the search of the Readwell residence and the safe. 2.5 kilograms of crystal meth was found in the safe.

## Defendant's Motion to Suppress

Defendant seeks the suppression of his statements to law enforcement on June 4 (Dkt. No. 82 at 3). The heart of Defendant's argument is that there was no probable cause for approaching the Mitsubishi with guns drawn and handcuffing Defendant. Defendant argues that nothing legally prevented Leon from going inside the Readwell residence after Gonzalez was arrested. He further argues that aerial surveillance only saw that items were being removed from the Readwell residence and placed in a vehicle, and that there is nothing inherently illegal about these acts. Further, he argues that when he drove away in the Mitsubishi, he committed no traffic infractions to justify a stop of his vehicle and that he legally parked his car in front of the Misty Pine residence. Accordingly, Defendant argues that although all of the above is highly

---

[7] The Defendant testified that he covered two shotguns in a red, full body pillowcase, the car windows were tinted, and the officer could not have seen any visible barrels when he approached the vehicle. *See* Testimony of Christopher Leon, hearing on Defendant's motion to suppress. The Court was supplied with a copy of the videotape in this stop. It does not appear that TFO Ricks looked in the back seat of the vehicle when he approached the driver.

suspicious, there was no probable cause for the initial stop. Further, he argues that even if TFO Ricks did see shotguns in the back of the vehicle, a person in Texas may possess such weapons (absent prohibited status and police had no knowledge of any prohibited status). Defendant argues that the search of the Mitsubishi was improper, and that officers should have obtained a search warrant for the Mitsubishi and merely detained Leon till such time as the warrant was signed. Defendant argues that all evidence obtained as a result of his allegedly "illegal stop/detention/arrest" should be suppressed under the "fruit of the poisonous tree" doctrine. Finally, Defendant argues that any statements he gave were involuntary and should be suppressed.

## Analysis

"It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime. Whether an officer has probable cause to search a vehicle depends on the totality of the circumstances viewed 'in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search.'" *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (internal citations omitted). Under the "collective knowledge doctrine," the officer conducting a stop, search, or arrest based on probable cause need not "know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts." *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007); *see also United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).

The Court finds that probable cause to conduct a warrantless search of the Mitsubishi was lawfully established when: meth was found inside the Lexus vehicle; Ms. Bonds told police

officers that Gonzalez had been on the cell phone during the vehicle chase; and surveillance observed items being removed from the Readwell home and put into the Mitsubishi. Police officers at the scene of the Lexus stop relayed by radio that they intended to obtain a search warrant of the Readwell home. Contrary to the Defendant's arguments, this Court finds that probable cause existed to obtain a search warrant for the Readwell home inasmuch as a number of individuals were seen entering and quickly exiting the premises in a manner consistent with drug trafficking and Gonzalez was seen leaving the Readwell home, entering the Lexus vehicle, driving away and drugs were then found inside the vehicle. A probable cause determination involves a practical, common-sense decision of whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Once other law enforcement officers became aware of drugs in the Lexus and then attempted to obtain a search warrant for the Readwell house, they were justifiably concerned when the Mitsubishi arrived, took items out of the house, and placed them in the Mitsubishi. The same totality of the circumstances that supported probable cause for a search warrant of the Readwell home also supports the probable cause determination to conduct a warrantless search of the Mitsubishi. *See United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010) ("there was 'a fair probability' that contraband or evidence of a crime would be found in the [vehicle]; absolute certainty of such a discovery is not required. The determination whether suspicious circumstances rise to the level of probable cause is a common-sense judgment, and officers are entitled to draw reasonable inferences based on their training and experience in making that determination.").

Given the totality of factors described above, police officers were justified in following the Mitsubishi after it left the Readwell home, in searching the vehicle for contraband or other

evidence of a crime, and in proceeding to question the driver. See *United States v. Gutierrez-Parra*, 711 F. App'x 752, 756 (5th Cir. 2017) ("reasonable suspicion was supported by a concatenation of acts" and "combination of factors"); *Ibarra-Sanchez*, 199 F.3d at 759 (5th Cir. 1999) ("agents had reasonable suspicion to stop the van when it pulled away from the Rainbow Ridge residence; the absence of an earlier search or arrest warrant in no way renders that stop illegal"); *United States v. Guerra*, 605 F. App'x 295, 297 (5th Cir. 2015) (officers had reasonable suspicion to stop and question driver of vehicle where they had observed his passenger participating in a suspected narcotics transaction and had observed passenger putting unknown object in the trunk).

In light of the circumstances, it was also reasonable for officers to order Leon out of the vehicle and detain him during the search, especially given the weapon found at the Lexus stop. *See Ibarra-Sanchez*, 199 F.3d at 761 ("Rarely are concerns for officer safety more paramount than during the stop of a vehicle suspected of transporting drugs.") (citations omitted). Probable cause existed for the arrest of Leon based on the drugs found in the vehicle's center console. Leon was properly Mirandized before being questioned, and any statements he gave thereafter were voluntary. The "fruit of the poisonous tree" doctrine is inapplicable here.

## Conclusion

Defendant's motion to suppress (Dkt. No. 82) is DENIED.

SIGNED this 22nd day of October, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE